McCLELLAN et al. v. MONTANA–DAKOTA
UTILITIES CO.

No. 14634.

United States Court of Appeals
Eighth Circuit.

May 8, 1953.

See also, 95 F.Supp. 977.

Milo V. Olson, Los Angeles, Cal., and Leif Erickson, Helena, Mont. (Guthrie, Darling & Shattuck, Los Angeles, Cal., Thompson, Hessian, Fletcher & McKasy, and John J. McKasy, Minneapolis, Minn., on the brief), for appellants.

Armin M. Johnson, Minneapolis, Minn. (John C. Benson, Rodger L. Nordbye and Faegre & Benson, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiffs in the district court from a summary judgment for the defendant. The opinion and judgment of the court are reported in 104 F. Supp. 46.

Jurisdiction of the federal court is predicated upon a claim for relief under § 22 of the Natural Gas Act, 15 U.S.C.A. § 717u; upon diversity of citizenship; and upon §

4 of the Anti-Trust Act, 15 U.S.C.A. § 15.

The complaint alleges that Capital Gas Corporation is a Montana corporation with its principal place of business at Billings, Montana; that the corporation was adjudged a bankrupt on June 7, 1943, and that the plaintiff Joseph L. McClellan is its qualified trustee; that the plaintiff John Wight is joined as a party plaintiff because he is the principal stockholder and creditor of the corporation; and that the defendant-appellee is a Delaware corporation with its principal place of business at Minneapolis, Minnesota.

It is alleged that the defendant-appellee owns and operates an integrated and interconnected gas pipeline system constructed prior to 1930, located partly in Montana and partly in North and South Dakota. That since some of the rights of way for said pipelines cross government owned lands under permits granted by the Secretary of the Interior pursuant to the provisions of the Leasing Act of February 20, 1920, 30 U.S.C.A. § 185, appellee is a common carrier.

The complaint further alleges that plaintiff Capital Gas Corporation during the period from 1930 to 1940 had gas which it desired to ship in interstate commerce through the defendant's pipelines but the rates charged by defendant were so unreasonably high that it could not do so except at a loss, as a result of which it sustained the damages sought in this action to be recovered. Those alleged damages consist of profits on the gas which it might have produced and sold and the loss of which profits resulted in the loss of its lands, gas wells, leases and operating agreements on gas producing lands, all of which losses resulted in its bankruptcy.

Judgment is asked against the defendant for damages as follows:

"1. $3,000,000 by reason of loss of assets; * * *.

"2. $10,000,000 by reason of loss of profits; * * *.

"3. That all of said damages be trebled" pursuant to the provisions of 15 U.S.C.A. § 15;

"4. For attorneys' fees; and

"5. For costs.

Since the defendant's motion for summary judgment was sustained we shall discuss only the alleged errors of the court controlling our decision here. The record, including the supplement thereto, contains 257 printed pages consisting of pleadings, affidavits and exhibits.

This case is a sequel to the case of Montana-Dakota Utilities Co. v. Federal Power Commission, 8 Cir., 169 F.2d 392. In that case the appellee here appealed from two orders of the Federal Power Commission. The first order dated March 22, 1946, required the appellee to file a new rate schedule for the common carrier transportation of natural gas in interstate commerce. The second order entered on rehearing was dated January 29, 1947. This court affirmed the orders on August 4, 1948, and the rate schedule complying with the Commission's orders was filed on April 2, 1949.

The complaint in this case, outlined above, was filed October 25, 1950. It is based on the contention that the rates filed and charged by defendant for transporting gas between 1930 and 1940 were unreasonably high and therefore fraudulent by reason of which the damages claimed in this case were sustained. The damages sought to be recovered are not for the difference between some hypothetical reasonable rate and the rate demanded by defendant but for alleged loss of profits which might have been earned had the Gas Corporation shipped gas during that period and for the loss of property rights resulting from the fact that it could not pay its debts and was thus forced into bankruptcy.

The Natural Gas Act became effective June 21, 1938, and gave the Federal Power Commission jurisdiction over the transportation and sale of natural gas in interstate commerce and over the rates and charges therefor. 15 U.S.C.A. § 717 et seq. The Act provided that every natural gas company should file with the Commission a schedule showing all rates and charges for any transportation or sale subject to its jurisdiction. Prior to that time the busi-

ness of the defendant as a common carrier of natural gas was subject to the jurisdiction of the Secretary of the Interior under the Leasing Act, supra. Under that Act the defendant had promulgated rate schedules for the transportation of natural gas on October 27, 1933, and March 2, 1937, referred to in the record as rates 3–G and 4–G respectively. On August 29, 1938, appellee filed these rate schedules with the Federal Power Commission. On December 6, 1941, proceedings were instituted before the Commission to test these rates. The appellant Gas Corporation was not a party to the proceedings. The Commission determined that the rates were unjust, unreasonable and discriminatory, and prescribed a new rate which as stated above was filed April 2, 1949.

The plaintiffs admit that the courts have no power to determine and prescribe reasonable rates and that except for the finding of the Commission that rates 3–G and 4–G were unreasonable they could not maintain this action in a federal court. As said by the Supreme Court in Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 695, 95 L.Ed. 912: " * * * a utility could not institute a suit in a federal court to recover a portion of past rates which it simply alleges were unreasonable. It would be out of court for failure to exhaust administrative remedies, for, at any time in the past, it could have applied for and secured a review and, perhaps, a reduction of the rates by the Commission." Again, in the same case the Court say: "It can claim no rate as a legal rate that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms. * * * the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one."

It is clear, therefore, that the appellants here are relying in part at least upon common law fraud as a basis for their right to recover the damages claimed to have been sustained. Upon this point the Supreme Court in the last cited case say: "It would be a strange contradiction between judicial and administrative policies if a relationship which the Commission has declared will not adversely affect public or private interests were regarded by courts as enough to create a presumption of fraud."

There are several reasons why the appellants cannot recover common law damages in this case, all of which are discussed by the trial court in its opinion cited above. We shall consider but one of them here which we regard as conclusive.

■■■■ The action is barred by the statute of limitations. It will be recalled that the losses sought to be recovered as damages are alleged to have occurred during the period between January 1, 1930, and January 1, 1940. The present action was commenced on October 25, 1950, more than ten years thereafter. The action was brought in the federal district court of Minnesota. Since the federal statutes involved have no applicable statute of limitations the law of the state of Minnesota is applicable. Cope v. Anderson, 331 U.S. 461, 463, 67 S.Ct. 1340, 91 L.Ed. 1602; Momand v. Universal Film Exchange, Inc., 1 Cir., 172 F.2d 37; Burnham Chemical Co. v. Borax Consolidated, Limited, 9 Cir., 170 F.2d 569. It is conceded that the applicable statute of Minnesota is six years. Minnesota Statutes Annotated, § 541.05.

■■■■ It is appellants' contention in substance that the statute was tolled because the "appellant had no remedy until the administrative question was determined that appellee's demanded rates 3–G and 4–G were unlawful" in the proceedings brought by the Mondakota Development Company on December 7, 1941, before the Federal Power Commission, and terminated on April 2, 1949. The chief difficulty with this contention is that the finding of the Commission in 1949 did not under any view of that proceeding relate back to the period from 1930 to 1940. It did not purport to

do so. The six-year statute of limitations had run its course approximately three years before that finding was made. Further, the appellant Gas Corporation was not a party to that proceeding and its rights were not pertinent to that investigation. Neither did the Commission undertake in that proceeding to prescribe a "reasonable" rate for the period from 1930 to 1940. It had no authority under the Federal Power Act to do so. There was, therefore, no basis for a claim for damages by appellant Gas Corporation during that period.

In addition to their claim for damages based upon common law fraud, appellants contend that the acts of the appellee complained of constituted violations of the Anti-trust laws. The claim for treble damages is especially predicated upon those laws. The contention does not aid appellants however because the anti-trust laws do not contain a statute of limitations. The statute of limitations of the state having jurisdiction of the cause of action alleged controls; and that statute begins to run at the time the plaintiff's interest is invaded to his damage. Burnham Chemical Co. v. Borax Consolidated, Limited, 9 Cir., 170 F.2d 569, and cases therein cited. The Moratorium Act of Congress of 1942, 15 U.S.C.A. § 16, as amended by the Act of June 30, 1945, suspended the applicable statute of limitations until June 30, 1946. This does not aid the appellants because this action was not brought until October 25, 1950. So whatever character may be attributed to appellants' action for damages, it is barred by the statute of limitations of Minnesota, supra.

We agree with the conclusions of the trial court in its opinion reported in 104 F. Supp. 46, but since the judgment appealed from must be affirmed for the reason that plaintiffs' alleged cause of action was barred by the statute of limitations of the state of Minnesota, it is unnecessary to extend this opinion to discuss other points.

Affirmed.