## BUCK KREIHS COMPANY, INC.

v.

## INTERNATIONAL MARINE CARRIERS, INC.

### Civ. A. No. 90–1721.

United States District Court,
E.D. Louisiana.

July 11, 1990.

---

Peter Joseph Butler, Peter J. Butler, Jr., Locke, Purnell, Rain & Harrell, New Orleans, La., for plaintiff.

Andrew Tredway Martinez, Terriberry, Carroll & Yancey, New Orleans, La., for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

Plaintiff, the Buck Kreihs Company, seeks money allegedly owed under a contract in which defendant, International Marine Carriers, engaged plaintiff to perform repairs on the United States Naval Ship ALGOL. Defendant operates the ALGOL under an agreement with Military Sealift Command, a unit of the United States Navy. Defendant now moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction, or alternatively, for summary judgment, on the ground that plaintiff's claims are barred by the Public Vessels Act, 46 U.S.C.App. §§ 781–790 and the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752.

Section 5 of the Suits in Admiralty Act provides that:

> Where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim.

46 U.S.C.App. § 745. This provision is incorporated into the Public Vessels Act by 46 U.S.C.App. § 782. It is well-settled that if the PVA or the SAA provides a remedy against the United States, there is no recourse against the government agent

whose acts gave rise to the claim. *See, e.g., Doyle v. Bethlehem Steel Corporation,* 504 F.2d 911 (5 Cir.1974); *Bowman v. Pan American World Services, Inc.,* 704 F.Supp. 695 (E.D.La.1989); *Santos v. RCA Service Co.,* 603 F.Supp. 943 (E.D.La.1985). In this case, Buck Kreihs concedes that the ALGOL is a public vessel. Application of the exclusivity provision therefore requires the resolution of two questions: First, was IMC an agent of the United States; and second, does the PVA or the SAA provide Buck Kreihs with a remedy against the United States?

I

A.

■ Generally, a contract operator of a naval vessel is an agent of the United States for purposes of § 745. *See River & Offshore Services Co. v. United States,* 651 F.Supp. 276, 278 (E.D.La.1987) and cases cited within. The contract between IMC and the government gives IMC the authority to operate the ALGOL on behalf of the government according to the government's regulations and directions. Thus, as the contract operator of the ALGOL, IMC is an agent of the government. Buck Kreihs does not contest IMC's agency status.

B.

Entering into subcontracts on behalf of the government is within the scope of IMC's agency. Section 5.3.2.2 of IMC's contract provides that IMC may enter into subcontracts for maintenance and repairs or for "Industrial Assistance," but that contracts in excess of $25,000, such as the one between Buck Kreihs and IMC, require the approval of the Contracting Officer. This provision also illustrates that IMC operated as an agent for the government in contracting with Buck Kreihs.

II

Because IMC was an agent of the government, Buck Kreihs has no remedy

against IMC if the PVA or the SAA provide a remedy against the United States. The Public Vessels Act permits an admiralty action to be brought against the United States "for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States." 46 U.S.C.App. § 781. Buck Kreihs argues that its contract claim against IMC does not fall within the scope of the PVA. Indeed, the PVA appears to have been primarily intended to cover tort claims. Although it does mention claims on a contract for towage and salvage, it mentions no other contract claim. Thus, in *Continental Casualty Co. v. United States,* 156 F.Supp. 942, 140 Ct.Cl. 500 (Ct.Cl.1957), the court found that the PVA did not provide a remedy for breach of a contract for ship repairs. Yet, in *Thomason v. United States,* 184 F.2d 105 (9 Cir.1950), the court found that a seaman's suit to recover overtime wages fell within the scope of the PVA.[1] More recently, in *Marine Coatings of Alabama, Inc. v. United States,* 674 F.Supp. 819, 823 (S.D.Ala.1987), the court held that the plaintiff's contract claim for repair services was beyond the scope of the Public Vessels Act.

■ Following the statutory text, and supported by *Marine Coatings* and *Continental Casualty,* this Court finds that plaintiff's contract claim is beyond the scope of the Public Vessels Act. *See also River & Offshore Services Co. v. United States,* 651 F.Supp. 276, 280 (E.D.La.1987). Claims involving public vessels that are beyond the scope of the PVA should properly be brought under the Suits in Admiralty Act. *United Continental Tuna Corp.,* 96 S.Ct. at 1328.

III

■ The Suits in Admiralty Act permits a traditional admiralty claim to be brought against the United States:

1. Twice the Supreme Court has declined to determine the scope of the PVA. *See United States v. United Continental Tuna Corp.,* 425 U.S. 164,

96 S.Ct. 1319, 1328 n. 21, 47 L.Ed.2d 653 (1976); *Calmar S.S. Corp. v. United States,* 345 U.S. 446, 73 S.Ct. 733, 738 n. 8, 97 L.Ed. 1140 (1953).

In cases where ... if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States....

46 U.S.C.App. § 742. Accordingly, "if a proceeding in admiralty could be asserted against a private person in the Government's position, then the Suits in Admiralty Act will provide a jurisdictional hook on which to hang a claim against the Government." *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1062 (5 Cir.1989), *cert. denied* — U.S. ——, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990). The Suits in Admiralty Act provides a remedy if principles of maritime law would allow the plaintiff to state a claim against a private person in the same position as the Government; for example, against a vessel owner. *Id.* In this case, Buck Kreihs could pursue a breach of contract claim against the United States.[2] *River & Offshore Services*, 651 F.Supp. at 280. Because Buck Kreihs could bring this traditional maritime claim against the United States under the Suits in Admiralty Act, § 745 prohibits it from bringing this action against the government agent, in this case IMC, whose acts gave rise to the claim.[3]

Accordingly, for the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED.

---

2. A contract to make repairs to a vessel or to furnish supplies or accessories to a vessel is maritime in nature and, thus, is within the admiralty jurisdiction of this Court. *See Hatteras of Lauderdale, Inc. v. GEMINI LADY*, 853 F.2d 848 (11 Cir.1988); *Ziegler v. Rieff*, 637 F.Supp. 675 (S.D.N.Y.1986); *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 467 F.Supp. 1257 (E.D.La. 1978).

3. Once again, the statutory text is central and, by its terms, unyielding. It does not, as plaintiff urges with enterprise, create an election to sue either the United States, or the agent.