802 F.2d 405
 55 USLW 2275
 Brenda NELSON, Joseph Johnson, Priscilla D. Adams, Angelia
V. Elliott, Georgia Middleton, Marion R. Richardson, Alfred
Lovelace, Teresa Posey, Marilee Dee Swindler Tenants of the
GGHA Who Supplied or Supply Their Own Gas (250 UNITS) Since
4/15/76, Plaintiffs-Appellees, Cross-Appellants,
v.
The GREATER GADSDEN HOUSING AUTHORITY; Ray Ingleheart,
Executive Director of the Greater Gadsden Housing Authority,
in his official capacity; Mildred Gilchrist, Housing
Director of the Greater Gadsden Housing Authority, in her
official capacity, Defendants-Appellants, Cross-Appellees.
 No. 85-7320.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 17, 1986.
 
 William D. Russell, Jr., Dortch, Wright & Russell, Gadsden, Ala., for defendants-appellants, cross-appellees.
 Abigail Turner, Mobile, Ala., for Brenda Nelson.
 Jeff Sacher, Tuscaloosa, Ala., James S. Sledge, Gadsden, Ala., for remaining plaintiffs-appellees, cross-appellants.
 Robert L. Wiggins, Jr., Edward Still, Birmingham, Ala., for amici curiae: Edward Still, Susan W. Reeves, Robert L. Wiggins, Jr., Jack Drake, Larry Menefee, and Gregory Stein.
 David B. Bryson, Nat. Housing Law Project, Berkeley, Cal., for amicus curiae: Nat. Housing Law Project.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before RONEY, Chief Judge, CLARK, Circuit Judge, and DOYLE*, Senior District Judge.
 RONEY, Chief Judge:
 
 
 1
 This is an appeal from an order granting injunctive relief and money damages in a class action proceeding involving utility allowances to tenants in a public housing complex. Although the plaintiffs did not have a private remedy under the federal housing statutes, as held by a recent decision in this Court, the judgment of the district court is affirmed under the pendent state law claims.
 
 
 2
 The plaintiffs (Nelson) filed complaints in the district court alleging causes of action based on 42 U.S.C.A. Secs. 1437 et seq., (the Housing Act) and section 1983, and state law claims based on breach of contract. At issue were utility allowances which the defendants (Greater Gadsden) were required to give Nelson pursuant to regulations of the United States Department of Housing and Urban Development (HUD). After a hearing on preliminary injunction, the district court enjoined Greater Gadsden to immediately implement a revised utility allowance schedule, to make annual adjustments in compliance with 24 C.F.R. Sec. 865.477 (1983), and to comply with all applicable HUD regulations codified at 24 C.F.R. Secs. 865.470--.482 (1983). The defendants thereafter adjusted the allowances twice. There has been no appeal from the injunction.
 
 
 3
 This left for the district court the plaintiffs' entitlement to compensatory damages, attorney's fees, and expenses. On cross-motions for summary judgment, the court awarded damages, attorney's fees, and other expenses. 606 F.Supp. 948. Although it is unclear what decision the court made on the section 1983 claims, it plainly did not decide the claim of a private remedy under the so-called Brooke Amendment. We interpret the judgment for damages to rest solely on the state law contract claims. It is now clear in this Circuit that tenants in Federal Public Housing have neither a section 1983 cause of action nor an implied private right of action to enforce the rent provisions of the Brooke Amendment. Brown v. Housing Authority of City of McRae, 784 F.2d 1533 (11th Cir.1986); cf. Wright v. City of Roanoke Redevelopment & Housing Authority, 771 F.2d 833 (4th Cir.1985), cert. granted, --- U.S. ---, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); contra Samuels v. District of Columbia, 770 F.2d 184 (D.C.Cir.1985); Beckham v. New York City Housing Authority, 755 F.2d 1074 (2d Cir.1985).
 
 
 4
 Two major points are made by the appellant housing authority: First, since there was no valid federal claim, the district court erred in retaining pendent jurisdiction of the state claims; second, the district court incorrectly decided the state law breach of contract issue.
 
 Pendent Jurisdiction over State Law Claims
 
 5
 Federal courts should permit the adjudication of pendent state claims in conjunction with federal claims between the same parties if the claims derive from a common nucleus of operative facts and a plaintiff would normally be expected to try them in one proceeding. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). A federal court may retain pendent jurisdiction over a state claim which is barred by the state period of limitations, even though all federal claims have been dismissed. Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir.1982). See also Emory v. Peeler, 756 F.2d 1547 (11th Cir.1985); L.A. Draper & Sons v. Wheelabrator-Frye, Inc., 735 F.2d 414 (11th Cir.1984); Quality Foods de Centro, S.A. v. Latin American Agribusiness Development Corporation, S.A., 711 F.2d 989 (11th Cir.1983). This suit was originally filed on April 15, 1982, and a dismissal would bar many of Nelson's claims due to the Alabama statute of limitations.
 
 
 6
 The power to exercise pendent jurisdiction is discretionary and the factors to be considered are judicial economy, convenience, and fairness to litigants. United Mine Workers, 383 U.S. at 726, 86 S.Ct. at 1139. In determining whether pendent jurisdiction should be exercised over a state claim which has no independent federal jurisdictional basis, the court should look to two factors. The "court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.' " L.A. Draper & Sons v. Wheelabrator-Frye, Inc., 735 F.2d at 427 (citations omitted).
 
 
 7
 The jurisdictional question is not whether the federal claims are decided to be without merit, but whether they are frivolous. Jurisdiction to entertain state claims is determined on the pleadings. Id. The recently decided case of Brown noted that the federal issue involved here was one of first impression in this Court. 784 F.2d at 1536. As noted above, the issue has been considered in three other circuits with differing results. The Supreme Court has apparently decided to resolve the conflict by granting certiorari in Wright, supra. The plaintiffs alleged a substantial federal claim.
 
 
 8
 The federal and state claims clearly derive from a common nucleus of operative fact. They alleged separate means of redressing a common wrong. Nelson sought to force Greater Gadsden to comply with applicable regulations regarding utility allowances. To achieve this end, claims were brought on alternative grounds. The fact that the allowable damages flowing from the alternative claims may be different does not alter the common elements of the claims. Because the federal claims were substantial and the state claims arose from a common nucleus of operative fact, the district court did not abuse its discretion in exercising jurisdiction over the pendent state claims.
 
 Breach of the Lease Agreement
 
 9
 The district court granted summary judgment to plaintiffs based on its finding that Greater Gadsden had breached its lease with the plaintiff tenants. Greater Gadsden challenges the findings upon which this decision was based.
 
 
 10
 Greater Gadsden makes several challenges. First, Greater Gadsden contends that the trial judge did not have competent evidence upon which to make the specified findings on the lease agreements. A copy of the lease agreement was entered in the record as an exhibit to "Plaintiffs' Second Motion for Partial Summary Judgment" filed April 10, 1984. Greater Gadsden did not object to the use of the attached lease agreement in the district court proceedings, and cannot object now. See Davis v. Howard, 561 F.2d 565, 570 (5th Cir.1977); Auto Drive-Away Co. of Hialeah, Inc. v. ICC, 360 F.2d 446 (5th Cir.1966); Lawson v. American Motorists Ins. Corp., 217 F.2d 724, 726 (5th Cir.1954); Wright, Miller & Kane, 10A Federal Practice and Procedure, Civil 2d, section 2722 (1983).
 
 
 11
 Greater Gadsden challenges the district court's finding that $25.50, $29.00, and $36.50 accurately represent the "amount of lawful allowance" for the period from June 1983 through February 1984, because they were not agreed upon. The district court found that the attorneys for all parties had gathered the data necessary to compute what the allowances should have been from January 1979 through February 1983. The court then adopted HUD's interpretation of what constitutes a reasonable utility allowance under the Brooke Amendment and HUD's implementing regulations. Greater Gadsden challenges neither the propriety of this procedure nor the accuracy of the calculations. The district court's calculations were based on data agreed to by all parties, about which there was no genuine issue of fact.
 
 
 12
 The closest question in the case is whether the lease agreement requires Greater Gadsden to comply with the HUD regulations. Greater Gadsden concedes that it was not in compliance with HUD regulations concerning the allowance for utility usage at the time this suit was filed. The section of the lease at issue reads as follows:
 
 4. OBLIGATIONS OF LANDLORD:
 Landlord agrees:
 
 13
 (B) To comply with the requirements of applicable regulations of the Department of Housing and Urban Development and local building codes and housing codes materially affecting health and safety;Although both parties contend this provision is unambiguous, each interprets its terms differently. This issue is controlled by the law of the State of Alabama. "The decision of whether a contract provision is or is not ambiguous is a question of law for the trial judge.... If the court finds as a matter of law that a contract is unambiguous, then the construction and legal effect of that contract are a determination that may be appropriately made by summary judgment." Food Service Distributor, Inc. v. Barber, 429 So.2d 1025, 1028 (Ala.1983) (citations omitted). The district court impliedly found that the lease terms were not ambiguous and found that Greater Gadsden had breached a contractual duty to comply with applicable HUD regulations.
 
 
 14
 Under the district court's order, any compensatory damages which are not claimed within a specified time limitation are to be used by Greater Gadsden to increase the energy efficiency of the apartment units or to improve the defendant-supplied appliances within the units. Greater Gadsden challenges this order as a fluid recovery system and relies upon Eisen v. Carlisle and Jacquelin, 479 F.2d 1005 (2d Cir.1973), vacated for other reasons, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). This reliance is misplaced. Eisen rejected a fluid recovery concept and practice as being "illegal, inadmissible as a solution of the manageability problems of class actions and wholly improper." 479 F.2d at 1018. This issue, however, may not have been properly before the court. 417 U.S. at 172 n. 10, 94 S.Ct. at 2141, 2142 n. 10. Other courts have addressed fluid recovery systems with different results. Simer v. Rios, 661 F.2d 655 (7th Cir.1981) cert. denied, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); Bebchick v. Public Utilities Comm., 318 F.2d 187 (D.C.Cir.) (en banc ), cert. denied, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963); contra, Windham v. American Brands, Inc., 565 F.2d 59 (4th Cir.1977), cert. denied, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). The objections to fluid recovery appear to relate to the use of this system to relieve plaintiff classes of the burden of proving individual damages or to avoid the dismissal of unmanageable class actions. Neither problem exists here. Plaintiffs have proven damages based on individual usages and charges and no dispute exists regarding class certification or manageability.
 
 
 15
 Nelson claims that the district court improperly awarded prejudgment interest based on state law rather than on federal law. Since the recovery was based on the state claim, however, there being no federal cause of action, state law would control the issue of pre-judgment interest.
 
 Attorney's Fees and Expenses
 
 16
 The district court granted the plaintiffs' request for attorney's fees and expenses. The award covers the entire litigation including the injunctive relief granted and the damage award for breach of contract. It is not clear, however, whether the district court based this award on federal or state law. Since no federal cause of action existed under 42 U.S.C.A. Sec. 1983, plaintiffs were not "prevailing parties" entitled to attorney's fees under 42 U.S.C.A. Sec. 1988 as far as the damage award is concerned. The district court may have posited the injunction on federal law. Since this was not appealed, even if the district court was wrong as a matter of law, plaintiffs may well be prevailing parties under federal law as to the injunction and entitled to section 1988 fees for the work done in obtaining the injunction. There may be a basis under Alabama law for award of fees for the work done thereafter. That point has not been made to this Court. In any event, the award of attorney's fees must be vacated and remanded for renewed consideration in light of this opinion. This Court should not review the issues argued as to enhancement and as to paralegal and secretarial costs without a clear decision of the basis for any award of attorney's fees. Plaintiffs are not entitled to fees for this appeal unless an award would be proper under Alabama law. The district court should either deny or fix fees for the work on this appeal depending upon its decision of this Alabama law question.
 
 
 17
 Since certiorari has been granted in Wright, supra, it is possible that this Court's decision in Brown that forecloses a federal claim may be overruled. This would have a direct bearing on section 1988 attorney's fees. It may be that the district court will find it appropriate to delay any denial of fees because plaintiffs did not prevail on a federal cause of action until this issue is resolved. Any award which does not depend on the ultimate outcome of this issue would, of course, not need to be delayed. Certainly the payment of the judgment for damages, here affirmed, should not wait for a final determination of the attorney's fees issues.
 
 
 18
 AFFIRMED in part, VACATED and REMANDED in part.
 
 
 
 *
 Honorable James E. Doyle, Senior U.S. District Judge for the Western District of Wisconsin